UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRIOT LENDING SERVICES, INC.,

    Plaintiff,

v.                                                 CASE NO. 8:20-cv-264-T-02AEP

AMERIFIRST FINANCIAL CORPORATION,
ANDREW KYLE TUTTLE, and
DALE HINRICHSEN,

    Defendants.
_____/

## **ORDER**

This cause comes before the Court pursuant to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 12), Defendants' Joint Response (Dkts. 25, 26), and Plaintiff's Reply (Dkt. 29), all with exhibits attached. After careful review of the parties' submissions, the applicable law, and the entire file, the Court concludes the motion should be granted in part and denied in part.

## **BACKGROUND**

Plaintiff filed a verified complaint against Defendants on February 3, 2020, seeking damages and equitable relief. Dkt. 1.[1] Plaintiff filed an emergency motion

---

[1] The exhibits to the verified complaint are found at docket 8.

for temporary restraining order and preliminary injunction on February 7, 2020. Dkt. 12. The record shows that the parties had been negotiating this matter and discussing it among themselves for several weeks prior to February 7. Dkt. 12 at 2. A telephonic hearing with all parties present was conducted February 10, 2020. Dkt. 15. At the hearing, the Court heard from counsel and directed a response, with affidavits if desired, and a reply. Dkts. 21, 22. The parties complied. Dkts. 25, 29.

Plaintiff, Patriot Lending Services, Inc. ("Patriot"), is a lender and servicer of residential mortgages as is its competitor Defendant Amerifirst Financial Corporation, which does business as Amerifirst Home Mortgage ("Amerifirst"). Defendant Andrew Tuttle worked for Patriot for sixteen years. Dkt. 1 ¶ 35. Defendant Hinrichsen was Patriot's head of underwriting and operations in Florida. Dkt. 12 at 4.

**LEGAL STANDARD**

In evaluating whether a motion for temporary injunctive relief should be granted, this Court must evaluate whether the movant established "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered in the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005)

(citation omitted); *see also* Local Rule 4.05(b)(4) (M.D. Fla.). Irreparable injury is "the *sine qua non* of injunctive relief." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quotation omitted). To qualify as irreparable, harm or injury must be "actual and imminent." *Id*.

Under Florida law, irreparable harm is presumed "when a party appropriates or intends to appropriate trade secrets for its own use or the use of another unauthorized party." *Southwestern Mech. Servs., Inc. v. Brody*, No. 8:08-cv-1151-T-30EAJ, 2008 WL 4613046, at *15 (M.D. Fla. Oct. 15, 2008) (citation omitted). Irreparable harm may be presumed in cases of wrongful interference with business relationships. *Id*. "The loss of customers and good will is an irreparable injury and is difficult to measure." *Id.*

## DISCUSSION

As a preliminary matter, certain limitations on possible relief for Plaintiff Patriot should be noted. First, no covenants not to complete or restrictive covenants of any kind exist that burden Defendants Tuttle or Hinrichsen, or any former Patriot employees for that matter. There are no non-solicitation agreements. And although Patriot seeks injunctive protection for its "Confidential Information and Trade Secrets" (Dkt. 12 at 5), Patriot offers no confidentiality memos or documents signed by Tuttle, Hinrichsen, or their colleagues. Likewise, Patriot seeks return of files and other items allegedly taken by Tuttle, Hinrichsen,

3

and their departing colleagues. Yet there are no document-retention or return memos or representations signed by anyone. Patriot has provided proof that Tuttle was aware of the employee handbook and helped draft it. Dkt. 29-2. And Hinrichsen signed an acknowledgement of the handbook. Dkt. 29-3. But what is not present is express and complete "non-competes" that one often sees in key-man departure litigation in Florida. Typically, these bind employees to avoid competing for a period of time and in a geographical location. Often these documents stipulate to injunctive relief and specifically address documentary removal, etc. Such contracts would make a temporary restraining order— which is always a reach for a plaintiff— much more obtainable.

This makes the ability to restrain the Defendants much more limited, as they are free to compete vigorously and immediately with Patriot within the bounds of the law. And unlike many cases, Defendants have not expressly agreed to be restrained, or expressly agreed to anything limiting their ability to work locally for a competitor.

Second, Patriot appears to seek a restraint upon Defendants' speech, and appears to seek an order requiring Defendants to make affirmative statements to the market about present matters: the motion asks for an order "prohibiting Defendants from making any representations" whatsoever regarding Patriot's Florida operations; and requiring Defendant Amerifirst to clarify the status of

4

Patriot's business.  Dkt. 12 at 17.  The Court will not impose a prior restraint upon "any representations" regarding Patriot's Florida operations, nor will it require affirmative, corrective statements to be made to the market (presumably the area of Hernando County and Lecanto, Florida), in whatever form that may be.  Patriot possesses adequate tort remedies to address any such issues of defamation or tortious interference, and the Court declines to proscribe or to prescribe Defendants' speech.

More concretely, Patriot asserts that its Encompass data base contains proprietary information and was taken.  At least seven unspecified loans that were due to close were taken.  Dkt. 12 at 8; Dkt. 12-1 at 2.  Patriot also asserts that its daily update report and closing calendar files were taken by Mikayla Manning and sent to Amerifirst on January 24, 2020.  Dkt. 12 at 7.  Patriot lists a series of files that it claims Tuttle asported as part of his plan to depart.  Dkt. 12 at 9.

Patriot also claims that the loan pipeline to Patriot was slowed down or stopped in anticipation of the defections to Amerifirst.  Dkt. 12 at 8.  This tort, if tort it be, would seem to have an adequate remedy at law for money damages.  As noted above, the same is true with wrongful statements allegedly made into the market.  Dkt. 12 at 8–9.

The sworn responses by Defendants paint an entirely different picture.  Dkt. 25.  Defendants assert that as part of a buy-out negotiation of Patriot they were

5

permitted access to loan files and documentation. Dkt. 25-2 at 3–4; *see also* Dkt. 25-2 at 6–7. They deny squarely any improper use of any of Patriot's proprietary information, and cite contemporary documentation to staff to this effect. *Id.*; Dkt. 16-1. They deny any current use of or access to the Marksman pricing system or Encompass data base. *Id.* at 4. Tuttle notes that his laptop and phone have been forensically copied by a local forensic computer company, for purposes of litigation preservation. Dkt. 25-1 at 4.

In Patriot's reply (at Dkt. 29), Patriot states that Defendants' response is a false "tale." They deny that loan and customer data Amerifirst received from Patriot on January 24, 2020 was consensually given by Patriot. Dk. 29-1. This appears to be a "swearing match" between the principals on both sides. The Court would be required to hold an evidentiary hearing and adjudge credibility of the affiant/witnesses in order to arrive at some conclusion.

The Court's ruling is as follows: The evidence presented is in equipoise. Both sides invoke affidavits and documentation against the other. There is no clear and unequivocal record here that shows Patriot is entitled to injunctive relief, or is likely to prevail on the merits of the suit. Nor is it clear that Patriot has no adequate remedy at law. This burden lies at all times with Patriot in the present posture. It is not met. Accordingly, subject to one exception below, the Court denies the motion for a temporary restraining order or other injunctive relief.

Defendant Hinrichsen, if he has not already done so, is ordered to provide his laptop, email, and cellular telephone to the local vendor E-Hounds for the same forensic imaging for litigation preservation that was done for Tuttle. Provision of these items to E-Hounds should be accomplished within five working days.

This concludes the Court's consideration of Dkt. 12. The parties should pursue this lawsuit in the normal course. Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 12) is granted in part and denied in part consistent with this order.

**DONE AND ORDERED** at Tampa, Florida, on February 14, 2020.

*s/William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record